UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CREATIVE EDUCATIONAL CONCEPTS, INC.,<br><br>Plaintiff,<br><br>V.<br><br>EMIR HADZIC, Ph.D.,<br><br>Defendant. | CIVIL ACTION<br>NO. 5:17-167-KKC<br><br><br>**OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on plaintiff Creative Educational Concepts, Inc.'s motion for a preliminary injunction. (DE 1-1). Through its motion, Creative[1] seeks to enforce a restrictive covenants agreement against former employee Emir Hadzic, Ph.D. For the following reasons, Creative's motion will be **GRANTED**.

## I. Background

Creative is a small company located in Lexington, Kentucky, whose business is to create, accredit, produce, and deliver live and web-based continuing medical education programs for healthcare professionals throughout the United States. (DE 1-1, Compl. ¶ 4). The predominate source of Creative's funding comes from the grant offices of certain major pharmaceutical companies. (DE 1-1, Compl. ¶ 4).

In September 2015, Creative employed Dr. Hadzic as its scientific director and strategist. As a condition of his employment with the company, Creative required Dr. Hadzic to sign a

---

[1] To avoid repetitive use of an acronym, the Court will refer to the plaintiff as "Creative."

1

restrictive covenants agreement. Dr. Hadzic has particular expertise in the fields of hematology and oncology.

On March 3, 2017, Dr. Hadzic informed Creative that he was resigning. Later, Dr. Hadzic told Creative that he would be accepting employment with PER Global, LLC.

PER Global, which is not a party to the current litigation, provides continuing medical education programming primarily in Europe, but it does offer web-based programming that is available in other parts of the world, including the United States. PER Global is affiliated with Physicians' Education Resource, LLC ("PER"), which provides continuing medical education programming within the United States and is a direct competitor of Creative.

After Dr. Hadzic resigned from Creative, the company sought additional information from him concerning his new position at PER Global. Creative was unsatisfied with Dr. Hadzic's response and subsequently brought suit in Fayette County Circuit Court in Fayette County, Kentucky, to enjoin Dr. Hadzic from violating the terms of his restrictive covenants agreement with Creative. Dr. Hadzic removed the case to this Court.

## II. Discussion

A district court gauges a request for a preliminary injunction based on four factors: (1) the plaintiff's likelihood of success on the merits; (2) irreparable harm to the plaintiff absent injunctive relief; (3) substantial harm to others resulting from an injunction; and (4) the broader public interest. *Michigan State AFL-CIO v. Schuette*, 847 F.3d 800, 803 (6th Cir. 2017).

a. **Likelihood of success on the merits**

First, the Court must consider whether Creative is likely to prevail on its claim that the parties' restrictive covenants agreement is enforceable. Creative seeks to enforce three aspects of its agreement with Dr. Hadzic—namely, the non-compete provision, the non-

solicitation provision, and the confidentiality provision. The Court will discuss the non-compete provision first.

Kentucky law governs the parties' restrictive covenants agreement, and under the law of the Bluegrass State, non-competition agreements "are valid and enforceable if the terms are reasonable in the light of the surrounding circumstances." *Crowell v. Woodruff*, 245 S.W.2d 447, 449 (Ky. 1951).

However, Dr. Hadzic does not first attack the reasonableness of the non-compete provision. Rather, he argues that his new position with PER Global falls outside of the provision's scope. (DE 4, Response at 14).

Under the terms of the parties' agreement, Dr. Hadzic promised that, during his employment with Creative and throughout the restricted period—defined as the twelve consecutive months following his termination with the company, he shall not:

> Directly or indirectly in any capacity . . . or on behalf of himself or another person or entity, advise, manage, render or perform services to or for any person or entity which is engaged in any business which provides products, services or any business activity which is competitive to the Company **within the United States of America**. "Competitive" entities include, but are not limited to, for profit and not for profit entities and associations pursuing educational grants in support of accredited continuing medical, pharmacy and nursing education ("CE/CME"). Examples of entities that are NOT deemed competitive include academia, medical facilities, pharmaceutical companies, biotechnology companies, and advertising agencies.

(DE 1-1, Confidentiality, Non-Competition, Non-Solicitation & Arbitration Agreement ¶ 4(a)(i)) (emphasis added).

In a declaration, Dr. Hadzic represents that, for his first year at PER Global, his responsibilities will be to focus on five meetings to be held in Europe that were scheduled prior to his hiring. (DE 4-1, Hadzic Decl. ¶ 41). PER Global held two similar European events in 2016.

Thus, Dr. Hadzic contends his new employment does not violate the non-compete provision of his agreement with Creative because PER Global provides continuing medical education programs in markets outside of the United States and because he will be focused on ex-U.S. work.

However, evidence presented at the hearing demonstrates that PER Global does not operate *solely* in markets outside of the United States. Instead, testimony shows that PER Global has taken the live content from its 2016 European programs and placed that content online. Further, the evidence reveals that PER Global solicited grants from United States pharmaceutical companies for this online content and that practitioners can receive American Medical Association credits for completing the programming. Moreover, this web content is accessible from all over the world, including from the United States.

Dr. Hadzic attempts to argue that the online programming is merely "incidental" to the live events in Europe. However, although the online programming may be secondary to the live events, it is certainly not incidental. Instead, it strikes the Court as the opportunity to double dip and collect revenues using recycled material. Such actions are not bad business practice, but the Court finds the online programming likely places PER Global in competition with Creative. Counsel for Dr. Hadzic conceded as much during the hearing.

Additional background is provided by Creative's motion for emergency relief filed June 2, 2017. (DE 30). Through that motion, Creative informed the Court that Dr. Hadzic was present at a U.S. oncology conference, sponsored by the American Society of Clinical Oncologists, in Chicago, Illinois. (DE 30-1). PER and Creative were scheduled presenters for the conference, and Creative argued that Dr. Hadzic's actions placed him in contempt of this Court's previously entered restraining order that prevented him from working on U.S. continuing medical education programming. (DE 30-1; DE 10).

In a declaration, Dr. Hadzic represented to the Court that he was in Chicago solely to meet with the program chair of one of PER Global's European events and that he was not attending any of the U.S. continuing medical education programming. (DE 33).

After an urgent telephone conference, the Court found that, in order to avoid the appearance of contempt, Dr. Hadzic should leave all hotels associated with the conference. (DE 32). Dr. Hadzic's counsel represented to the Court that he would advise Dr. Hadzic to leave Chicago.

Although not directly implicated, the doctrine of apparent authority in agency law provides another manner in which to consider Dr. Hadzic's arguments. *See generally* Restatement (Third) of Agency § 3.03 (Am. Law Inst. 2006) (March 2017 Update) (discussing creation of apparent authority). In this vein, Dr. Hadzic has argued that a firewall bars him from participating in work done by PER, but his presence at the conference in Chicago leads the Court to question whether such a representation is true in practice and not merely in theory. Indeed, the separation between PER and PER Global that Dr. Hadzic has attempted to articulate appears to be more of a guise, as the record reflects that the companies share an office and certain personnel and that PER's website advertises PER Global's upcoming conferences.

Based on all the evidence, Creative has shown that it is likely to succeed in demonstrating that PER Global provides products that are—and that it is engaging in business that is—competitive to Creative "within the United States." Thus, Dr. Hadzic's new job working for PER Global likely falls within the scope of the non-compete provision, requiring the Court to evaluate the reasonableness of that provision.

Under Kentucky law, an ancillary agreement to an employment contract, such as a non-competition agreement, will be upheld "where the purpose is to prevent unfair competition by the employee or his subsequent employer, and the restraint is no greater than reasonably

5

necessary to secure the protection." *Crowell*, 245 S.W.2d at 499. Reasonableness is determined by considering a variety of factors, including "the nature of the business or profession and employment" and the character of the service to be performed and the relationship of the employee. *Id.* The scope of the restrictions with respect to their character, duration, and territorial extent are also important considerations. *Id.*

To state the analysis another way, the Court must consider whether the restraint imposed on the employee is more comprehensive than necessary to afford fair protection to the legitimate interests of the employer. *Id.* The interests of the public are also significant. *Johnson v. Stumbo*, 126 S.W.2d 165, 169 (Ky. 1938).

Here, Creative is likely to succeed in demonstrating that the twelve-month restrictive period is reasonable. In fact, Kentucky courts have found covenants not to compete that last for several years to be enforceable. *See Gardner Denver Drum LLC v. Goodier,* No. Civ.A 3:06-CV-4-H, 2006 WL 1005161, at *8 (W.D. Ky. April 14, 2006) (collecting cases).

Whether the territorial limitation is reasonable is a closer question, but the Court finds that Creative is likely to succeed in showing that it is. *See id.* (upholding a non-compete agreement that prohibited employee from working for any business that competed with the former employer in any area of the United States in which that employer did business); *see also Cent. Adjustment Bureau, Inc. v. Ingram Assocs., Inc.*, 622 S.W.2d 681 (Ky. Ct. App. 1981). In this context, the Court acknowledges the nature of Creative's business, which is providing continuing medical education programming to a nationwide audience. The record suggests that several hundred accredited companies are engaged in this business within the United States.

Having found the restriction is likely reasonable in duration and territorial extent, the Court must ask the more pressing question: whether the non-compete provision seeks to protect legitimate interests of Creative.

As an initial matter, the Court observes "that trade secrets and customer goodwill are among the most basic interests traditionally protected by a covenant not to compete." *Gardner Denver Drum*, 2006 WL 1005161, at *9 (citing *Crowell*, 245 S.W.2d at 450). Moreover, courts "have adopted a more expansive view of the interests that an employer may legitimately protect, including its substantial investment in an important employee . . . ." *Id.*

The evidence is not clear as to the type or quantity of training that Creative provided to Dr. Hadzic, but that does not end the inquiry. Instead, the Court must consider the facts and circumstances of this particular case.

As the Court views the record, Creative hired Dr. Hadzic for his expertise in hematology and oncology and for his scientific and medical writing skills. In his position at Creative, Dr. Hadzic served in a strategic role, where he would have been aware of the relationships Creative had built with employees of certain grant offices in seeking its funding and where he was introduced to some of these individuals. Creative describes the grant offices as its customers and "the very lifeblood of its business." (DE 1-1, Compl. ¶ 4).

According to the written description of his job duties at PER Global that Dr. Hadzic gave Creative, he will:

> work to develop and execute a strategy to obtain grant revenues for accredited Ex-U.S. medical education portfolio, to raise the profile of medical education offering amongst reporters and Key Opinion Leaders, and to coordinate the conceptual development, scientific programming, and planning of the programs to ensure timely and profitable execution. This includes contents development for assigned Ex-U.S. customized educational grants and Ex-U.S. core/non-core meeting programming for Ex-U.S. grant proposals.

(DE 1-1, Compl. ¶ 18).

Creative was concerned by this language because it indicated that Dr. Hadzic was to perform tasks for PER Global that were similar to what he had done for Creative, including grant and proposal development.

The Court acknowledges that PER Global has taken steps to prevent Dr. Hadzic from violating the terms of his non-competition restriction. Nevertheless, this agreement was well drafted, and it was executed by both Creative and Dr. Hadzic upon the advice of counsel.

In this posture, the Court finds Creative has shown that it can likely succeed on its claims that Dr. Hadzic held a "sensitive position" at Creative and that he left to perform similar work for PER Global, a competitor to Creative within the United States. *See Gardner Denver Drum*, 2006 WL 1005161, at *10 ("Goodier's relationships with Drum's distributors and his knowledge of the industry is highly significant, and obviously valuable to Tuthill, his new employer. The Covenant seeks to protect Drum's investment in Goodier by preventing him (and Tuthill, by implication) from immediately using the skills he gained from years of employment at Drum for the benefit of Tuthill.").

As an additional matter, Creative asserts that Dr. Hadzic's employment with PER Global would also violate the non-solicitation and confidentiality provisions of the parties' restrictive covenants agreement. However, the Court finds that those provisions are concomitant with the non-compete provision and, as such, the Court's analysis of the non-compete provision will control for purposes of this opinion.

**b. Irreparable harm**

The next factor for the Court to consider in determining whether injunctive relief is appropriate is the potential for irreparable harm to Creative if the injunction is not issued.

Courts applying Kentucky law have found that "[c]ovenants not to compete are prime examples for appropriate equitable relief." *Id.* (quoting *Louisville Cycle & Supply Co. v. Baach*, 535 S.W.2d 230, 232 (Ky. 1976) ("Generally speaking, it is well settled that if an

8

employee's covenant not to engage in competition with his employer or former employer . . . is valid and reasonable, equity will assume jurisdiction to enjoin its breach by the employee.") (internal quotation marks omitted)).

The Court sees no reason why this generalization should not control in this case as Creative has demonstrated that permitting Dr. Hadzic to work for PER Global would likely allow him to work for a company that directly competes with Creative. Moreover, Dr. Hadzic acknowledged, by signing the agreement, that his breach would cause irreparable damage to Creative that could not be adequately measured in monetary damages. (DE 1-1, Confidentiality, Non-Competition, Non-Solicitation & Arbitration Agreement ¶ 5).

**c. Potential harm to others if injunctive relief is granted**

The Court must also consider the harm to others that could result if a preliminary injunction is granted. On this factor, Dr. Hadzic argues that he will be personally harmed by an injunction because he could not continue to work in his desired field. He also contends that the medical community will be deprived of his expertise in hematology and oncology and that this would have a negative effect on patient outcomes.

First, Kentucky law does recognize that "[e]quity will not enforce the named terms of a negative covenant restraining a man from other employment unless the employer has a substantial right peculiar to his business which it is the duty of the court to protect, if it can do so without imposing an undue hardship upon the employee." *Calhoun v. Everman*, 242 S.W.2d 100, 103 (Ky. 1951).

Here, Dr. Hadzic signed the restrictive covenants agreement with Creative upon the informed consent of counsel, and the "competitive" language of the agreement was specifically negotiated. (DE 5-2, Email). Moreover, the non-compete provision explicitly states certain entities in which Dr. Hadzic *could* continue to work and that would *not* be considered Competitive to Creative:

9

> Examples of entities that are NOT deemed competitive include academia, medical facilities, pharmaceutical companies, biotechnology companies, and advertising agencies.

(DE 1-1, Confidentiality, Non-Competition, Non-Solicitation & Arbitration Agreement ¶ 4(a)(i)).

Second, the Court does not doubt the important role that Dr. Hadzic and other scientists and healthcare professionals play in patient care and outcomes. Still, equity seeks to promote enforcement of contracts that parties willingly agree to enter and where other serious inequities would not result from such enforcement.

On these facts, the Court does not find the potential harm to others if the injunction is granted to weigh heavily in its analysis.

### d. Public interest

Lastly, the Court must consider the broader public interest that would be impacted should injunctive relief be granted. A lengthy discussion of this factor is not needed because public policy seeks to enforce reasonable covenants made between employers and employees. *See Gardner Denver Drum*, 2006 WL 1005161, at *11 (quoting *Lareau v. O'Nan*, 355 S.W.2d 679, 681 (Ky. 1962)) ("It must be remembered that Lareau, wholly free of any financial coercion, made a solemn covenant with the clinic.").

### III. Conclusion

In sum, Creative has shown a likelihood of success on the merits to demonstrate that its non-compete agreement with Dr. Hadzic is reasonable in duration, geography, and scope. Creative has also shown that it would suffer irreparable harm absent injunctive relief and that equity supports relief, even after weighing the potential harm to Dr. Hadzic and others. Public policy also supports the requested injunctive relief.

For all of these reasons, it is hereby **ORDERED** that:

(1) Creative's motion for injunctive relief is **GRANTED**;

(2) Dr. Hadzic is **ENJOINED** from working for PER Global until the restrictive period expires; and

(3) Pursuant to the terms of the parties' agreement, the restrictive period has been tolled; thus, Dr. Hadzic is **ENJOINED** for twelve months following the entry of this order.

Dated June 14, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY